UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:14-00101 |
| | ) | JUDGE CAMPBELL |
| BRYAN PUCKETT | ) | |
| AMIR BABAK BANYAN | ) | |
| a/k/a Bobby Banyan | ) | |

MEMORANDUM AND ORDER

I. Introduction

Pending before the Court are the Defendants' Motions For Judgment Of Acquittal (Docket Nos. 149, 150, 151) and the Government's Response (Docket No. 152) in opposition. The Court heard oral argument on the Motions on July 6, 2016. For the reasons set forth herein, the Motions are DENIED.

II. Factual and Procedural Background

In this case, which was originally assigned to Judge Aleta A. Trauger, the Defendants were charged, along with April Gardner and Andrew Hoffman, with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One), and various substantive counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Six). (Docket No. 1). Prior to trial, Defendant Hoffman pled guilty, and awaits sentencing before Judge Trauger. (Docket Nos. 85, 159, 166). Following a jury trial, Defendant Gardner was acquitted of all charges against her (Docket No. 137); Defendant Puckett was convicted of Counts One, Two and Three, and acquitted of Counts Four and Six (Docket No. 131); and Defendant Banyan was convicted of Counts One, Three and Six, and acquitted of Counts Four and Five. (Docket No. 133). Judge Trauger recused herself after trial, and the case was subsequently transferred to the undersigned

Judge. (Docket Nos 158, 159).

Through the pending motions, the Defendants advance an argument they made to Judge Trauger during the trial. Specifically, the Defendants contend that the allegations of the Indictment and the proof at trial establish only that they defrauded Sun Trust Mortgage, Inc. (Counts One, Two through Five) and/or Fifth Third Mortgage Company (Counts One, Six), and that these entities are not *financial institutions* for purposes of Section 1344 (the bank fraud statute). Section 1344 provides as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> > (1) to defraud a financial institution;[1] or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Judge Trauger denied the Defendants' request to dismiss the charges on that basis during the trial. (Docket No. 144, at 255-295; Docket No. 145, at 10).

At the trial, the Government admitted the following stipulations of the parties:

> Parties also stipulate that during all times alleged in the indictment in this case the accounts of SunTrust Bank were insured by the Federal Deposit Insurance Corporation, and that during all times alleged in the indictment in this case the accounts of the Fifth Third Bank were insured by the Federal Deposit Insurance Corporation.

---

[1] The term "financial institution" is defined in 18 U.S.C. § 20. In 2009, after the events charged in the Indictment in this case, Congress amended the definition of "financial institution" in 18 U.S.C. § 20 to include mortgage lending businesses. See Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(a)(3).

2

And that during all times alleged in this indictment in this case, SunTrust Mortgage, Inc. was a wholly owned subsidiary of SunTrust Bank; and that during all times alleged in the indictment in this case Fifth Third Mortgage Company was a wholly owned subsidiary of Fifth Third Bank.

(Docket No. 144, at 253).

Also during the trial, the Government called Elizabeth Godwin, a Senior Vice-President of SunTrust Mortgage, who testified as follows regarding the relationship between SunTrust Mortgage and SunTrust Bank:

> Q. All right. The – how would you describe the relationship between SunTrust Mortgage Company and SunTrust the bank?
>
> A. Wholly owned subsidiary of the bank.
>
> Q. And how are the profits and losses of SunTrust Mortgage, how do they affect the profits and losses of SunTrust Bank?
>
> A. If I lose money, the bank loses money. If I make money, the bank makes money.

(Docket No. 143, at 103).

The Government also called William Bruce, a quality assurance analyst at Fifth Third Bank, who testified as to the relationship between Fifth Third Mortgage Company and Fifth Third Bank:

> Q. And can you explain the relationship between Fifth Third Mortgage Company and Fifth Third Bank?
>
> A. Fifth Third Mortgage Company is a soley (sic) owned subsidiary of Fifth Third Bank.
>
> Q. And in what way, if any, do the profits and losses of Fifth Third Mortgage Company affect the profits and losses of Fifth Third Bank?
>
> A. Any losses incurred by Fifth Third Mortgage Companies, losses or profits, flow directly up through the bank, Fifth Third Bank Corp.

(Docket No. 143, at 74-75).

Prior to submission of the case to the jury, Judge Trauger fashioned the questions on the verdict form for the substantive bank fraud counts to reflect the two clauses of Section 1344, as follows:

> With respect to the charge in Count ___ of the Indictment (Bank Fraud) as to the first clause of the bank fraud statute (scheme to defraud a financial institution), we find as follows:
>
>                 Guilty                    Not Guilty
>
> The defendant is:     _____            _____
>
> With respect to the charge in Count ___ of the Indictment (Bank Fraud) as to the second clause of the bank fraud statute (scheme to obtain money or property owned by or in the control of a financial institution by means of materially false or fraudulent pretenses, representations or promises), we find as follows:
>
>                 Guilty                    Not Guilty
>
> The defendant is:     _____            _____

(Docket Nos. 131, 133). The language of the verdict forms implemented the instructions to the jury regarding the elements required for each clause. (Docket No. 128, at 16-18). With respect to Defendant Puckett, the jury checked both clauses of Count Two and the second clause of Count Three. (Docket No. 131). As for Defendant Banyan, the jury checked both clauses of Counts Three and Six. (Docket No. 133).

III. Analysis

In reviewing a motion for a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure, a court must view the evidence in the light most favorable to the government, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Welch, 97 F.3d 142, 148 (6th

4

Cir. 1996); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The court may not independently weigh the evidence, nor judge the credibility of the witnesses who testified at trial. Id.

The Defendants contend that they are entitled to an acquittal on the substantive bank fraud charges, as well as the conspiracy charge, because no rational trier of fact could have found that they intended to defraud a financial institution under Section 1344(1), or that they obtained property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations, or promises under Section 1344(2). Because the Court concludes that the Defendants are not entitled to an acquittal of their convictions based on Section 1344(2), it is unnecessary to address their argument regarding Section 1344(1) or the conspiracy charge.[2]

Relying primarily on United States v. Bennett, 621 F.3d 1131 (9th Cir. 2010), the Defendants argue that obtaining money or property from a wholly-owned subsidiary of a financial institution through fraudulent representations is not sufficient to establish that they obtained money or property "owned by, or under the custody or control of a financial institution." In Bennett, the defendant was convicted of fraudulently procuring mortgages from Equicredit Corporation, a wholly-owned subsidiary of Bank of America. 621 F.3d at 1133-34. It was undisputed by the parties that Bank of America was a "financial institution" under the bank fraud statute, but that Equicredit was not. Id., at 1134. Furthermore, the government relied solely on Section 1344(2) to support the convictions, arguing, as a matter of law, that a parent

---

[2] The Defendants contend that they are entitled to an acquittal of the conspiracy conviction for the same reasons they are entitled to acquittal on the Section 1344(2) charges.

5

corporation "owns" the assets of its wholly-owned subsidiary. Id., at 1136. The government did not argue that the fraudulently obtained funds were under the "custody or control" of Bank of America. Id., at 1136 n. 1.

In rejecting the government's argument, the Bennett court relied on "[m]ore than a century of corporate law" in concluding that the owner of the shares of stock in a company is not the owner of the corporation's property. Id., at 1136. The court pointed out that in the corporate law context, a debtor of a parent company could not seize the assets of a wholly-owned subsidiary because the parent did not "own" those assets. Id. The court was unconcerned about the use of corporate law principles to interpret a federal criminal fraud statute. Id., at 1137.

In reaching its decision, the court rejected the reasoning of the Fifth Circuit in United States v. Cartwright, 632 F.2d 1290 (5th Cir. 1980), a case addressing the parameters of 18 U.S.C. § 657, which prohibits an officer of a federally insured lending institution from misapplying funds that "belong to" the institution. The Cartwright court upheld the defendant's conviction even though the defendant misapplied funds as an officer of a wholly-owned subsidiary of a federally-insured savings and loan. In reaching its decision, the court explained that principles of corporate law do not necessarily apply in the criminal law context, and should be "readily abandoned when used 'to defeat public convenience, justify wrong, protect fraud, or defend crime.'" 632 F.2d at 1292 (quoting Quinn v. Butz, 510 F.2d 743, 758 (D.C. Cir. 1975)). Adopting the reasoning of a similar case, United States v. Kehoe, 573 F.2d 335 (5th Cir. 1978), the court stated:

> . . . it is difficult to assail the argument that depleting the assets of a wholly-owned subsidiary reduces the value of the subsidiary's stock and thus directly diminishes the assets of the parent. We therefore conclude that the funds of a wholly-owned subsidiary 'belong to' the parent within the meaning of 18 U.S.C.

6

§ 657.

(Id.) Cf. United States v. White, 882 F.2d 250 (7th Cir. 1989)(False statements made to leasing corporation, a wholly-owned subsidiary of bank, were not shown to have "influenced" parent bank within the meaning of 18 U.S.C. § 1014; noting, however, that a wholly-owned subsidiary is "by definition, wholly owned by its parent, so it is natural to attribute its assets to the parent" for purposes of 18 U.S.C. § 657.)

More recently, the District of Columbia Circuit Court, in United States v. Hall, 613 F.3d 249 (D.C. Cir. 2010), held that sufficient evidence supported the defendant's bank fraud convictions involving Guaranty Residential Lending ("GRL"), a wholly-owned subsidiary of a bank, and National City Mortgage Company ("NCM"), an operating subsidiary of a bank. In reaching its decision, the court explained:

> The easier case for us is that of GRL: being wholly owned by federally insured Guaranty Bank, a loss to GRL would constitute a loss to Guaranty Bank. See United States v. White, 882 F.2d 250, 253 (7th Cir.1989) ('A wholly owned subsidiary is, by definition, wholly owned by its parent, so it is natural to attribute its assets to the parent.'). A somewhat more difficult situation arises with respect to NCM, described at trial only as an operating subsidiary of federally insured National City Bank of Indiana. However, even though NCM was not, like GRL, described as a wholly owned subsidiary, its status as an operating subsidiary implies at least a majority or controlling interest held by National City Bank of Indiana, and consequently a loss to NCM would constitute a loss to federally insured National City Bank of Indiana.

613 F.3d at 252. See also United States v. Moore, 75 F.Supp.3d 568, 573-74 (D.D.C. 2014)(For purposes of Section 1344(2), the defendant obtained money "owned by, or under the custody or control" of federally-insured banks by defrauding their wholly-owned subsidiaries because "it is natural to attribute a subsidiary's assets to the parent, such that the loss to the wholly-owned subsidiary would constitute a loss to the parent.").

7

This Court is persuaded by the reasoning of the decisions set forth above that, for purposes of Section 1344(2), the property of a wholly-owned subsidiary is property owned, or under the custody or control, of the parent bank. The Court is not persuaded by the Bennett court's use of corporate law concepts to determine the parameters of the criminal bank fraud statute. Indeed, the Supreme Court has suggested that civil law concepts are not to be used to narrow the scope of the statute:

> As a last-gasp argument, Loughrin briefly asserts that § 1344(2) at least requires the Government to prove that the defendant's scheme created a risk of financial loss to the bank. See Brief for Petitioner 36-40. But once again, nothing like that element appears in the clause's text. Indeed, the broad language in § 1344(2) describing the property at issue – 'property owned by or under the custody or control of' a bank – appears calculated to avoid entangling courts in technical issues of banking law about whether the financial institution or, alternatively, a depositor would suffer the loss from a successful fraud. See United States v. Nkansah, 699 F.3d 743, 754 (C.A.2 2012) (Lynch, J., concurring in part and concurring in judgment in part). And Loughrin's argument fits poorly with our prior holding that the gravamen of § 1344 is the 'scheme,' rather than 'the completed fraud,' and that the offense therefore does not require 'damage' or 'reliance.' Neder v. United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); see supra, at 2393-2394.

Loughrin v United States, 134 S.Ct. 2384, 2395 n. 9 (2014)(emphasis added).

In any event, the decision in Bennett is distinguishable in that the government in that case did not rely on the "custody or control" language of Section 1344(2). In this case, by contrast, the Government relies on all three concepts: ownership, custody and control. Furthermore, unlike a typical shareholder, which was the focus of the Bennett court's reasoning,[3] the witnesses

---

[3] According to the Bennett court:

> As early as 1926, the Supreme Court recognized that '[t]he owner of the shares of stock in a company is not the owner of the corporation's property.' R.I. Hosp. Trust Co. v. Coughton, 270 U.S. 69, 81, 46 S.Ct. 256, 70 L.Ed.2d 475 (1926). While the

8

in this case testified that the mortgage companies' profits and losses flowed directly to their parent banks. There was no such testimony in the Bennett case.

In a Notice Of New Authority (Docket No. 168), Defendant Banyan argues that a decision issued by the Second Circuit Court of Appeals on July 7, 2016, United States v. Michael Bouchard, ___ F.3d ___ , 2016 WL 3632591 (2nd Cir. July 7, 2016) further supports his position. In Bouchard, the court reversed the defendant's convictions for bank fraud and making a false statement to a financial institution, and upheld his conviction for conspiracy to file false statements with a financial institution. With regard to Section 1344(2), the Bouchard court held that proof that the defendant intended to obtain the property of a wholly-owned subsidiary of a financial institution did not establish that the defendant intended to obtain property owned by or under the custody or control of a financial institution. Id., at *6-7. In reaching its decision, the court explained the type of proof that the government should have adduced to support the convictions:

> Of course, the Government might have been able to prove that Bouchard knew that money from mortgage lenders came from banks by virtue of his knowledge of the industry. But it failed to make this argument or proffer evidence of Bouchard's extensive knowledge of the real estate and mortgage lending industry as a reason to convict him at trial.

Id., at *7.

Unlike the Bouchard case, the Defendants in this case cannot rely on a similar lack of

---

shareholder has a right to share in corporate dividends, 'he does not own the corporate property.' Id.

621 F.3d at 1136.

9

proof of intent. Indeed, Defendant Puckett wrote mortgage payment checks for loans issued by SunTrust Mortgage to "SunTrust Bank" as payee. (Government Trial Exhibits 2K, 3P, and 3Q). As for Defendant Banyan, he had been employed as a branch mortgage manager by SunTrust Mortgage a year or so prior to issuance of the loans at issue. (Docket No. 143, at 103-04; Docket No. 145, at 199-200). Furthermore, the names of the wholly-owned subsidiaries at issue here were substantially similar to their parent financial institutions. It was reasonable to infer, therefore, that the Defendants were aware that the fraudulently obtained funds were owned, or were under the custody or control of the parent financial institutions.

For these reasons, the Court concludes that there was sufficient evidence adduced at trial to support the Defendants' substantive bank fraud convictions under Section 1344(2), and their conspiracy conviction. To the extent the Defendants have raised other challenges to their convictions, the Court finds their arguments unpersuasive.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE